UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RUTH ANN MCCART,

     Plaintiff,

v.                            Case No. 8:22-cv-389-VMC-AEP

WAL-MART STORES EAST, LP,

     Defendant.
_____/

## <u>ORDER</u>

This matter is before the Court on consideration of Plaintiff Ruth Ann McCart's Motion for Summary Judgment (Doc. # 53), filed on January 10, 2023, Defendant Walmart Stores East, LP's Motion for Summary Judgment (Doc. # 56), and its <u>Daubert</u> Motion to exclude the testimony of Ms. McCart's expert (Doc. # 55), both filed on February 1, 2023. Walmart responded to Ms. McCart's Motion on January 31, 2023. Ms. McCart responded to both of Walmart's Motions on February 3, 2023. (Doc. ## 57, 59). The Court did not allow replies. (Doc. # 50). For the reasons that follow, Walmart's <u>Daubert</u> Motion is granted in part and denied in part, Walmart's Motion for Summary Judgment is granted, and Ms. McCart's Motion for Summary Judgment is denied.

I.    **Background**

 This case arises from an incident at a Walmart store in New Port Richey, Florida, in which Ms. McCart sustained injuries from falling two-liter soda bottles.

 A.    **Incident**

 On December 26, 2020, Ms. McCart entered the Walmart Supercenter in New Port Richey, Florida, and attempted to retrieve a two-liter soda bottle from the top of a gravity feed shelf. (Doc. # 54-5 at 23:5-10). Ms. McCart observed that the shelf was full. (Doc. # 56-2 at 32:22-23). The front of the gravity feed shelf stands seventy inches from the floor and is capable of holding ten rows across of two-liter plastic soda bottles with nine to ten bottles per row in depth. (Doc. # 55-2 at ¶¶ 68, 74). When the shelf is full, the contents weigh approximately 400 to 450 pounds. (Id. at ¶¶ 83,87).

 While attempting to get a Cherry Coke bottle, Ms. McCart stood on her "tippy toes" and braced her left hand on the shelf for balance. (Doc. # 56-2 at 26:22-25). She heard a snap as she grasped the bottle, and the shelf collapsed forward into her hands. (Id. at 27:1-6). When she let go of the shelf, the soda bottles fell on her. (Id. at 27:7-13). There is a dispute as to whether Ms. McCart was standing on the bottom shelf of the display. Ms. McCart indicated that

her "feet were on the floor" when she reached for the bottle.
(Id. at 31:11-12). However, Carlos Oztolaza, the first
employee to arrive after the incident, testified that Ms.
McCart told him that "she had stood onto the lower shelf of
the soda racks and tried to reach and pull a Coca-Cola out."
(Doc. # 54-2 at 14:10-12).

Ms. McCart did not ask for assistance because "there was
nobody around" and she did not want to leave her "elderly
parents out in the car for very long." (Doc. # 56-2 at 29:8-
13).

### B.   **Store Conditions**

Two days prior to the incident, Ms. McCart visited the
same Walmart store and sought assistance from a store employee
to retrieve a two-liter bottle from a gravity shelf. (Doc. #
56-2 at 28:6-10). She stated that the employee "shook the
rack really hard" to bring the bottle to a position from which
he could retrieve it. (Id. at 28:11-12). She said that the
employee told her, "[W]e have to do that all the time because
. . . it's an ongoing problem." (Id. at 28:14-16). However,
Mr. Oztolaza, who regularly stocked items, stated that he had
seen customers requiring help retrieving bottles only a
"handful of times." (Doc. # 54-2 at 17:17-18:4). In the aisle
where Ms. McCart's incident occurred, there was a warning on

3

the shelf which advised customers "to ask for assistance with items on the top shelf." (Doc. # 55-2 at 47).

There were no substantially similar incidents in the area within the six months prior to the incident (Doc. # 56-5 at 4), and Walmart did not receive any complaints about the condition of the shelving rack prior to Ms. McCart's injury. (Id. at 3). Michael Phifer, an assistant manager at the New Port Richey store for four years (Doc. 54-3 at 7:5-15), stated that he had "never seen a shelf collapse" prior to Ms. McCart's incident. (Id. at 55:2). However, approximately two weeks after her incident, a Walmart stocker in the same aisle experienced a similar shelf collapse. (Doc. # 56-3 at 30:8-32: 7).

Walmart had a "Clean as You Go" policy requiring employees to refresh modulars and shelving when they stocked products. (Doc. # 54-11). The policy indicates that, "during modular or display changes," employees should "replace any rusty or damaged shelves" and "inspect displays to ensure that they remain secure." (Id. at 1, 4). Mr. Phifer indicated that "stockers are trained when [they are] stocking our shelves and our merchandise, if they notice a shelf is . . . not safe or something like that, they always take protocols." (Doc. # 54-3 at 55:22-25). Mr. Oztolaza testified that

4

"whenever you put something on the shelf . . . if for whatever reason you noticed something was wrong, like if the whole shelf wiggled, or if it felt loose or something, or tipped a certain way or whatever, you would just go and replace" the damaged shelving unit. (Doc. # 54-2 at 26:21-25). Kyle Galullo, a former Walmart employee, did not recall whether there was an inspection policy. (Doc. # 59-6 at 21:18-20; 22:14-19). Mr. Galullo did stock shelves, but "most of the time, [he] was . . . in the back unloading trucks." (Id. at 22:11-13).

The shelf involved in the incident was stocked with Coca-Cola merchandise. (Doc. # 54-3 at 15:15-16). As such, the shelf was stocked by the vendor, not by Walmart employees. (Id.). However, "if a Walmart associate comes across a shelf . . . even if it is . . . a vendor item, if something is not safe, [they] will take corrective actions to fix it[.]" (Id. at 57:6-9).

C. **Expert Testimony**

Ms. McCart offers the testimony of Elliott Stern as to whether the gravity shelf was an unreasonable hazard. (Doc. # 42-1). Dr. Stern has a Ph.D. in mechanical engineering and is a licensed professional engineer in the state of Florida. (Id. at 3). He has decades of experience in product design

5

and testing, and he has "provided system design, controls and safety consulting and analysis regarding a variety of machines, machine tools, fabrication equipment, transfer lines, consumer products, storage and retrieval systems." (Id. at 3-4).

In this case, he performed a site inspection and conducted a safety analysis to determine the reason for the shelf's collapse. (Id. at 15). During his site inspection, he observed a bent fastener on the shelf he examined during his site inspection (Id. at 17) and noted that Walmart had secured the front and back of the gravity shelf with plastic zip ties. (Id. at 19). In his report, he reached the following conclusions:

    (1)   Walmart failed to demonstrate any documented or minimum safety protocol related to the inspection and maintenance of the subject shelving system.

    (2)   Walmart failed to warn customers regarding fall hazards associated with the gravity-feed shelving and wire separator/retention system.

    (3)   The hazard associated with the failure to reliably secure the wire separator/retainer under foreseeable conditions is unreasonably dangerous (resulting in an unacceptable risk of harm) to an extent beyond that which would be contemplated or appreciated by an ordinary consumer.

(Id. at 23). In determining that Walmart did not have an adequate inspection policy, Dr. Stern reviewed only the

depositions of Walmart employees, none of whom testified as a corporate representative. (Doc. # 55-3 at 47:7-49:3).

During his deposition, Dr. Stern also admitted he could not rule out that Ms. McCart's actions contributed to the failure of the shelf. The following exchange is representative of his testimony:

> Q. Do you agree with me that that could have contributed to the rack falling?
> A. Any force including her contact with the rack can contribute to its final mishap and failure. . . .
> Q. Okay. Did you rule out that Miss McCart contributed to the incident? . . .
> A. No. I wouldn't characterize her as — she's involved in the incident and she is in — applying loads to the product and inherently to the rack itself at the time of the failure. So I can't say that she has — that her contact with it didn't contribute in some way.

(Id. at 38:19-22, 39:9-16).

D. **Procedural History**

Ms. McCart initiated this action on November 8, 2021, in state court alleging one count of negligence. (Doc. # 1-1). Walmart filed its answer on December 7, 2021 (Doc. # 1-5), and removed the case to this Court on February 16, 2022. (Doc. # 1).

Now, Walmart seeks final summary judgment in its favor, and Ms. McCart seeks partial summary judgment on the issue of Walmart's liability. (Doc. ## 53, 56). Both Walmart and Ms.

McCart responded. (Doc. ## 54, 59). Additionally, Walmart filed a _Daubert_ motion to exclude the expert report and testimony of Dr. Stern (Doc. # 55), and Ms. McCart responded. (Doc. # 57). The Motions are ripe for review.

**II.   Legal Standard**

   **A.   Daubert Motion**

Federal Rule of Evidence 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Implementing Rule 702, _Daubert v. Merrell Dow Pharmaceuticals, Inc._, 509 U.S. 579 (1993), requires district courts to ensure that any and all scientific testimony or evidence admitted is both relevant and reliable. _See_ _Id._ at 589-90. The _Daubert_ analysis also applies to non-scientific expert testimony. _Kumho Tire Co. v. Carmichael_, 526 U.S. 137, 147 (1999). District courts must conduct this gatekeeping function "to ensure that speculative, unreliable expert testimony does not reach the jury under the mantle of

reliability that accompanies the appellation 'expert testimony.'" <u>Rink v. Cheminova, Inc.</u>, 400 F.3d 1286, 1291 (11th Cir. 2005). The Eleventh Circuit "requires trial courts acting as gatekeepers to engage in a 'rigorous three-part inquiry.'" <u>Hendrix v. Evenflo Co.</u>, 609 F.3d 1183, 1194 (11th Cir. 2010).

> The district court must assess whether:
>
> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

<u>Id.</u> The proponent of the expert testimony bears the burden of showing, by a preponderance of the evidence, that the testimony satisfies each of these requirements. <u>Id.</u>

**B.   <u>Summary Judgment</u>**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude

a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996)(citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (quoting Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to

be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). But, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).

Finally, the filing of cross-motions for summary judgment does not give rise to any presumption that no genuine issues of material fact exist. Rather, "[c]ross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." Shaw Constructors v. ICF Kaiser Eng'rs, Inc., 395 F.3d 533, 538-39 (5th Cir. 2004); see also United States v. Oakley, 744 F.2d 1553, 1555 (11th Cir. 1984) ("Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is

entitled to judgment as a matter of law on facts that are not genuinely disputed[.]" (citation omitted)).

III.  **Analysis**

A.  **Daubert Motion**

Walmart seeks to exclude Dr. Stern's expert testimony on the grounds that it fails to meet the qualification, reliability, or helpfulness requirements of Rule 702. (Doc. # 55 at 1-2).

1.  **Qualifications**

The first question under Daubert is whether Dr. Stern is qualified to testify competently regarding the matters he intends to address. City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 563 (11th Cir. 1998). An expert may be qualified "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "Determining whether a witness is qualified to testify as an expert 'requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony.'" Clena Invs., Inc. v. XL Specialty Ins. Co., 280 F.R.D. 653, 661 (S.D. Fla. 2012) (quoting Jack v. Glaxo Wellcome, Inc., 239 F. Supp. 2d 1308, 1314-16 (N.D. Ga. 2002)).

"This inquiry is not stringent, and so long as the expert is minimally qualified, objections to the level of the

expert's expertise [go] to credibility and weight, not
admissibility." Id. (citations and internal quotation marks
omitted). The Court is mindful that its "gatekeeper role under
Daubert 'is not intended to supplant the adversary system or
the role of the jury.'" Maiz, 253 F.3d at 666 (quoting Allison
v. McGhan, 184 F.3d 1300, 1311 (11th Cir. 1999)).

Walmart contends that Dr. Stern is not qualified to opine
on the failure of the shelving system because he has not been
retained in a matter "involving the same or similar type rack
involved in this case." (Doc. # 55 at 3) (citing Doc. # 55-3
at 23:9-19).

The Court finds that Dr. Stern is qualified to testify
competently on the failure of the gravity shelf. Dr. Stern
has a Ph.D. in mechanical engineering and is a licensed
professional engineer in the state of Florida with decades of
experience in product design and testing. (Doc. # 55-2 at 3).
Even if he has not served as an expert witness in a case
involving similar shelving, he is still minimally qualified
to testify on these matters.

## 2.   Reliability

The Court must also assess whether the expert's
methodology is reliable. "Exactly how reliability is
evaluated may vary from case to case, but what remains

constant is the requirement that the trial judge evaluate the reliability of the testimony before allowing its admission at trial." Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004) (citing Fed. R. Evid. 702, Advisory Committee Notes (2000)). There are four recognized, yet non-exhaustive, factors a district court may consider in evaluating reliability:

> (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the technique has been subjected to peer review and publication; (3) the known and potential error rate of the methodology; and (4) whether the technique has been generally accepted in the proper scientific community.

Seamon v. Remington Arms Co., 813 F.3d 983, 988 (11th Cir. 2016) (citations omitted). A district court can take other relevant factors into account as well. Id. (citations omitted).

"If the [expert] witness is relying solely or primarily on experience, then," in establishing reliability, "the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Frazier, 387 F.3d at 1261 (citation and internal quotation marks omitted). "[A] trial court may exclude expert testimony . . . whose factual basis is not

adequately explained." <u>Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty.</u>, Fla., 402 F.3d 1092, 1111 (11th Cir. 2005).

Walmart argues that Dr. Stern's opinions are not based on reliable facts because they are "lacking a basic foundation or [are] based on false or misleading information[.]" (Doc. # 55 at 7-8). Specifically, Walmart highlights Dr. Stern's failure to review Ms. McCart's deposition transcript and his decision to rely solely on employee depositions to determine if Walmart had a minimum safety protocol in place. (<u>Id.</u>).

Dr. Stern's testimony is reliable as to his opinions that Walmart failed to warn customers and that the failure to secure the wire retainer resulted in an unreasonably dangerous condition. Dr. Stern reviewed Ms. McCart's responses to interrogatories, which sufficiently describe Ms. McCart's experience. (Doc. # 55-2 at 40). <u>See</u> <u>Kilpatrick v. Breg, Inc.</u>, 613 F.3d 1329, 1336 (11th Cir. 2010) ("[T]here are instances in which a district court may determine the reliability prong under <u>Daubert</u> based primarily upon an expert's experience and general knowledge in the field[.]"). Any alleged flaws in Dr. Stern's methodology in deriving these two opinions are better addressed during cross examination. <u>See</u> <u>Maiz v. Virani</u>, 253 F.3d 641, 666 (11th Cir. 2001) ("Vigorous cross-examination, presentation of contrary

evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking [debatable] but admissible evidence." (citations and internal quotation marks omitted)).

However, the Court finds that Dr. Stern's opinion that Walmart failed to "demonstrate any documented or minimum safety protocol related to the inspection and maintenance of the subject shelving system" (Doc. # 42-1 at 23), is not reliable because it is based on insufficient facts. Dr. Stern failed to review relevant parts of the record related to Walmart's inspection protocols. See Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla., 402 F.3d 1092, 1111 (11th Cir. 2005) ("[A] trial court may exclude expert testimony that is imprecise and unspecific, or whose factual basis is not adequately explained."). District courts in this circuit have excluded expert opinion in similar circumstances. See Dasha Tharpe V. Georgia CVS Pharmacy, LLC, CVS Pharmacy, Inc., & WEC 99D-6 LLC, No. 1:21-cv-01085-JPB, 2023 WL 2160850, at *7 (N.D. Ga. Feb. 21, 2023) (excluding expert's testimony when the photos the expert used in his analysis "were taken at different angles, making it difficult, if not impossible, to reach any reliable conclusions about discrepancies between the two pictures.");

16

Quattry v. Covington Specialty Ins. Co., No. 6:18-cv-1112-CEM-DCI, 2019 WL 7423548, at *9 (M.D. Fla. Oct. 30, 2019) (finding unreliable the testimony of an engineering expert regarding damage from certain vibrations because the expert had only conducted a visual inspection of the area and reviewed deposition testimony of two eyewitnesses); Cordoves v. Miami-Dade Cnty., 104 F. Supp. 3d 1350, 1360 (S.D. Fla. 2015) (finding that the expert's testimony was not based on sufficient facts and data because "[a]lthough [the expert] considered certain relevant parts of the record, there are critical cracks in [his] factual foundation due to his failure to consider other relevant record evidence.").

In arriving at this opinion, Dr. Stern reviewed only the depositions of three Walmart employees, none of whom testified as a corporate representative. (Doc. # 47:7-49:3). The cited employee testimony does not indicate that Walmart failed to demonstrate any safety protocol related to the shelving units. Mr. Phifer indicated that "stockers are trained when [they are] stocking our shelves and our merchandise, if they notice a shelf is . . . not safe or something like that, they always take protocols." (Doc. # 54-3 at 55:22-25). Mr. Oztolaza testified that he inspected shelves when stocking them and would address any safety issues

17

if he became aware of them. (Doc. # 54-2 at 26:21-25). Mr. Galullo – the only employee who did not affirmatively state that there was an inspection policy – indicated that he did not recall whether there was such a policy. (Doc. # 59-6 at 21:18-20; 22:14-19). Finally, Dr. Stern failed to review any of Walmart's written safety protocols provided in their initial disclosures and responses to interrogatories. (Doc. # 55-3 at 47:17-48:9).

### 3.    **Helpfulness to the Trier of Fact**

Again, to be admissible, expert testimony must assist the trier of fact. Fed. R. Evid. 702. "By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004) (citation omitted). "[T]he court must 'ensure that the proposed expert testimony is "relevant to the task at hand," . . . i.e., that it logically advances a material aspect of the proposing party's case.'" Allison v. McGhan, 184 F.3d 1300, 1312 (11th Cir. 1999) (citation omitted).

So, while "[t]he 'basic standard of relevance . . . is a liberal one,' Daubert, 509 U.S. at 587, . . .[,] if an expert opinion does not have a 'valid scientific connection to the pertinent inquiry[,]' it should be excluded because

18

there is no 'fit.'" <u>Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp.</u>, 582 F.3d 1227, 1232 (11th Cir. 2009) (citations omitted). "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." <u>Frazier</u>, 387 F.3d at 1262–63 (citation omitted).

Walmart advances the same argument here as it did for the reliability prong. It contends that Dr. Stern's opinions are not helpful to the trier of fact because they are based on an incomplete set of facts. (Doc. # 55 at 10). For the same reasons stated in the previous section, the Court finds that Dr. Stern's opinions that Walmart failed to warn customers and that the failure to secure the wire retainer resulted in an unreasonably dangerous condition would be helpful to the trier of fact. However, Dr. Stern's opinion as to Walmart's inspection policy would not be helpful. <u>See Saint-Vil v. City of Miami Beach</u>, No. 19-24640-CIV, 2022 WL 2132086, at *6 (S.D. Fla. June 14, 2022) ("[A] sweeping conclusory opinion from Mr. Masten that has no tangible evidentiary support does not satisfy that [helpful to the trier of fact] standard." (citing <u>Frazier</u>, 387 F.3d at 1266)).

Walmart's <u>Daubert</u> Motion is granted in part. The Court excludes Dr. Stern's testimony and report regarding his

conclusion that Walmart failed to demonstrate a minimum safety protocol related to the inspection and maintenance of the shelving system. Walmart's <u>Daubert</u> Motion is otherwise denied.

### B. <u>Walmart's Motion for Summary Judgment</u>

Walmart argues that summary judgment is appropriate because Ms. McCart cannot prove that Walmart had actual or constructive knowledge of the alleged dangerous condition. (Doc. # 56 at 9-10). In response, Ms. McCart argues first that there was a similar incident two weeks later. (Doc. # 59 at 6). Second, she states that there was an "ongoing problem" of customers requiring help to retrieve soda bottles from the gravity shelf. (<u>Id.</u> at 10-11). She contends that employees knew that shaking the shelves caused the hinges to weaken. (<u>Id.</u>). Finally, she alleges that Walmart's failure to regularly inspect the shelves means that Walmart had constructive knowledge of the dangerous condition and failed to warn Ms. McCart. (<u>Id.</u> at 11).

A federal court sitting in diversity must apply the substantive law of the state where the action arose. <u>Pendergrast v. Sprint Nextel Corp.</u>, 592 F.3d 1119, 1132 (11th Cir. 2010). Under Florida law, a cause of action for negligence comprises four elements: (1) a duty requiring the

defendant to conform to a certain standard of conduct, (2) the defendant's breach of that duty, (3) a causal connection between the defendant's breach and the plaintiff's injury, and (4) actual loss or damage resulting from the injury. See Clay Elec. Co-op., Inc. v. Johnson, 873 So.2d 1182, 1185 (Fla.2003); Delgado v. Laundromax, Inc., 65 So.3d 1087, 1089 (Fla. 3d DCA 2011). In Florida, "a property owner or occupier owes two duties to an invitee: (1) the duty to use reasonable care in maintaining the property in a reasonably safe condition, and (2) the duty to warn of latent or concealed dangers which are or should be known to the owner and which are unknown to the invitee and cannot be discovered through the exercise of due care." Grimes v. Fam. Dollar Stores of Fla., Inc., 194 So. 3d 424, 427 (Fla. 3d DCA 2016).

"Where an invitee has been injured by a dangerous condition on a business premises and seeks to recover damages from the premises owner, the invitee ordinarily must establish that the premises owner had either actual or constructive knowledge or notice of the dangerous condition." Khorran v. Harbor Freight Tools USA, Inc., 251 So. 3d 962, 965 (Fla. 3d DCA 2018). A court may infer constructive knowledge "if the dangerous condition existed for such a length of time that in the exercise of ordinary care, the

premises owner should have known of it and taken action to remedy it." Id. "The possessor of real property has no legal duty to constantly know of all existing dangerous conditions on the property and there is no legal evidentiary presumption of such knowledge." Haynes v. Lloyd, 533 So. 2d 944, 946 (Fla. 5th DCA 1988). However, a breach can be shown "when a [business owner] fails to make a reasonably diligent search or inspection at reasonable intervals of time." Barbour v. Brinker Fla., Inc., 801 So. 2d 953, 956 (Fla. 5th DCA 2001).

Given this context, "[t]he movant for summary judgment in a negligence action must demonstrate as a matter of law either that there is no negligence or that the sole proximate cause of the injury was the plaintiff's negligence." Smith v. Grove Apartments, LLC, 976 So.2d 582, 585 (Fla. 3d DCA 2007). "To establish that there was no negligence the movant must demonstrate that there is no duty owed to the plaintiff or that it did not breach a duty which is owed." Id. (quoting Bryant v. Lucky Stores, Inc., 577 So.2d 1347, 1349 (Fla. 2d DCA 1990)). "Importantly, negligence may not be inferred from the mere happening of an accident alone." Oken ex rel. J.O. v. CBOCS, Inc., No. 8:12-cv-782-VMC-MAP, 2013 WL 2154848, at *6 (M.D. Fla. May 17, 2013) (citation omitted).

Walmart did not have actual knowledge of the potential danger of the gravity shelf. No employees testified that they had seen any bent fasteners on the shelf, and there had been no similar shelf collapses or complaints about the shelves prior to Ms. McCart's incident. Ms. McCart tries to allege actual knowledge by noting that a similar incident occurred two weeks *after* her incident; however, subsequent incidents are not probative of Walmart's knowledge prior to Ms. McCart's incident.

Ms. McCart also attempts to imply actual knowledge by stating that employees knew that shaking the shelves to retrieve merchandise caused the hinges to loosen. (Doc. # 59 at 11). Employees acknowledged that there was an "ongoing problem" of soda bottles becoming stuck in the gravity shelves. (Doc. # 56-2 at 28:14-16). Ms. McCart uses this testimony to jump to the conclusion that the employees knew they were creating a latent dangerous condition; however, the Court declines to jump with her. No employee made any statement indicating they were aware prior to Ms. McCart's incident that shaking the soda bottles loose would eventually lead to shelf collapse.

There is also no evidence that Walmart had constructive knowledge of the dangerous condition. Ms. McCart argues that

Walmart failed to reasonably inspect the shelving units. She states that "[t]here is not one scintilla of record evidence that Walmart's employees ever inspected the shelves[.]" (Doc. # 59 at 10). Ms. McCart simply misstates the record evidence. First, Walmart had a "Clean as You Go" policy in place that directed employees to inspect shelving units when restocking merchandise. (Doc. # 54-11). Second, Mr. Oztolaza and Mr. Phifer both testified that employees regularly inspected the shelving units and that employees would address any issue they came across. (Doc. # 54-3 at 55:22-25; Doc. # 54-2 at 26:21-25). Third, the only witness who did not confirm that regular inspections occurred, Mr. Galullo, stated only that he could not recall whether there was an inspection policy (Doc. # 59-6 at 21:18-20; 22:14-19), and noted that he spent most of his time unloading trucks. (Id. at 22:11-13). Therefore, Ms. McCart has adduced no evidence demonstrating that Walmart failed to conduct regular inspections that would have uncovered the dangerous condition of the shelving unit.

Ms. McCart has also failed to produce any evidence regarding the length of time the shelf constituted a dangerous condition. Dr. Stern does not opine as to the length of time the shelf was in a dangerous condition. In fact, he acknowledges that Ms. McCart's contact with the front of the

24

gravity shelf likely contributed to the failure of the shelf. (Doc. # 55-3 at 38:19-22, 39:9-16). As such, the Court cannot infer constructive knowledge of the dangerous condition based on the length of time the condition existed. See Encarnacion v. Lifemark Hosps. of Fla., 211 So. 3d 275, 278 (Fla. 3d DCA 2017) (affirming summary judgment for defendant where the plaintiff did "not establish how long the substance had been on the floor"); Walker v. Winn-Dixie Stores, Inc., 160 So.3d 909 (Fla. 1st DCA 2014) (affirming summary judgment for defendant where there was no evidence of how long the substance was on the floor before the plaintiff fell); contra Khorran, 251 So. 3d at 965 (finding evidence that multiple metal trailer hitches were stored on a shelf unreachable without a ladder was evidence that the dangerous condition existed "for a sufficient period of time that a[n] . . . employee should have known about it and taken steps to remedy it.").

Summary judgment is therefore granted to Walmart.

### C.   **Ms. McCart's Motion for Summary Judgment**

As the Court has already determined that summary judgment in favor of Walmart is appropriate, the Court denies Ms. McCart's Motion for Summary Judgment (Doc. # 53).

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Plaintiff Ruth Ann McCart's Motion for Summary Judgment (Doc. # 53) is **DENIED.**

(2)   Defendant Walmart Stores East LP's <u>Daubert</u> Motion (Doc. # 55) is **GRANTED** in part and **DENIED** in part. The Court excludes Dr. Stern's opinion that Walmart failed to demonstrate any documented or minimum safety protocol related to the inspection and maintenance of the subject shelving system.

(3)   Defendant Walmart Stores East LP's Motion for Summary Judgment (Doc. # 56) is **GRANTED.**

(2)   The Clerk is directed to enter judgment in favor of Defendant Walmart Stores East LP and against Plaintiff Ruth Ann McCart.

(3)   Thereafter, the Clerk is directed to terminate all pending motions and deadlines and **CLOSE** the case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>6th</u> day of March, 2023.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE